Good afternoon. We have one case on this afternoon calendar. Our third colleague, Judge John M. Walker, Jr. is in Florida and he's participating by phone. Let me just ask him if he is indeed there. I'm here. Great. Can you hear me? Yes, indeed. Coming in loud and clear. Very good. Great. Thanks very much to everybody for accommodating us all. Okay. Your honors, may it please the court, Gregory Joseph for Costco. Your honors, it appears to us that this case is unique. Neither the district court nor the appellees have identified any case striking down a restriction on use where the party seeking to strike it down knowingly entered into it, promptly repudiated and then uses that repudiation and breach and the consequences of it to claim that it's unenforceable. Costco would not commit the millions of dollars to develop its parcel that were necessary without this use restriction. Recital H of the REA specifically says that. 32 days after signing it, Costello knowingly and secretly and deliberately breached it. Now trying to justify what it's done, in this court twice in its brief on page four, it says that in the REA, Costco agreed to a liquor store, quote, in building D or F. That's false. Section 5.1N specifically says there can be no liquor store other than in building F or on the southern property. Trying to justify what it did, GAP says in two places in its brief on pages four and six that its original lease was in building F and in fact it told the district judge that it actually got a liquor license for building F that then was changed to building D. This is also untrue. Costello the landlord pleads that in fact the original lease was for building E, another prohibited location, not building F which would have been okay. And the SLA website makes it very clear that there's no reference to building F in the application because the license is for building D. And the application is shortly before the licensed spot. If you look at the SLA website which gives a December 2014 date that it was for building D. That's 390, Henrietta. I would urge the court to listen to just one short hearing of the SLA. The first one we cite in our brief on page eight because you will hear that in order to get its license, GAP used the fact that a Costco was coming in to argue that there would be a customer base for its liquor store even though two others in the vicinity were struggling. So the violation is actually used against Costco. There's no allegation Costco knew any of this was going on, that Costco knew about the breach, knew about this application and it's used against Costco and this is a matter that's decided on the equities. Certainly the 1951 claim, the RPAPL is. I'm going to spend a moment on the oral agreement. There's no claim of an oral agreement by Costello. Costello is not even pled to have been present when the alleged oral agreement occurred which was on July 14th at an SLA hearing. And Costco disputes that there was any oral agreement. In fact, there was a written agreement, the liquor license agreement which both we and SLA, GAP signed. If you look at Costello's brief on page five, it says that GAP agreed to it. Didn't sign it. I misspoke. It agreed to it. And that's not an integrated agreement so the agreement is sufficient which dispels any oral agreement. It's a curious oral agreement. It's identical to the written agreement except it omits the critical term which is Costco was not willing to waive this provision it spent millions in reliance on unless CHM got the liquor license. That's the only difference between the oral agreement and the written agreement. Now the district court said, well, it can't be a modification of the REA for two reasons. First it was a separate contract, separate consideration. Second it's with a third party. With all respect, both of those are erroneous. We cited any number of New York cases including Nassau Trust but many others for the proposition that it would be a modification. It had to be a separate contract with separate consideration and indeed the second case cited by the district judge, a case called Northbound from the Northern District of Illinois says exactly the same thing. Second, the fact that it's with a third party is irrelevant and we've cited a number of cases for that. The question is does it seek to vary the terms of the REA and it has to be irrelevant here because this is a third party directed provision. Only a third party is going to come forward and be able to claim some kind of an oral agreement. So that would gut the entire provision if because it's a third party he's able to say there was an oral agreement and there's no question they're claiming that this oral agreement varied the terms of the REA. I refer the court to pages 335 and 336 of the joint appendix where Mr. Thomas specifically says that in answer to the district judge, pages 14 and 17 of GAP's appeal brief say the same for GAP and joint appendix page 317 says exactly the same thing for Costello. Based on the oral modification to the REA's location restriction, Costello is entitled to judgment on the pleadings. So we have a 15-301 issue so they have to show partial performance and reliance. While Costello can't show partial performance, he wasn't even there at the SLA hearing, he had no objection to withdraw. Everything he did is explainable by the liquor license agreement which he signed and is binding as to him. He also can't show reliance since he breached the contract and entered into the agreement 10 months before the alleged oral agreement. And everything GAP did is explainable by the liquor license agreement. They dispute, they agreed to it. Costello and we both have said in our briefs they did agree to it, it's a fact question at a minimum, it was no basis on which to expunge the use restriction. So there was no performance by Costello, no reliance that's uniquely referable to this alleged oral agreement by GAP. On the promissory estoppel claim, I'd ask the court to take a look at what the promissory estoppel claim is that was actually pled. So on page 86 of the joint appendix, the only promissory estoppel claim that is pled by GAP is against CHM, not against Costco. CHM is a non-party. It says that Dano entered into it as attorney for CHM and CHM didn't perform. Even if it were against Costco, the liquor license agreement explains all of the behavior. Again, that's a fact question since they disputed, but there are good grounds to accept that on judgment on the pleadings, we could come forward with evidence to support the fact that they agreed to the liquor license agreement. And to the extent they've claimed promissory estoppel, that has no impact on the section 1951 claim, because even if we agreed to waive it in one instance, it doesn't mean it wouldn't be good as to others. If this becomes the booming center that everybody hopes it will be, there could be any number of liquor stores that are allowed to come in. The use restriction should stand, and it certainly doesn't bar enforcement against Costello. He's not even pled promissory estoppel. He wasn't even present. They weren't even present to hear. The alleged promise. My time is short, so I'm going to be as quick as I can. Three reasons why the 1951 expungement of the use restriction was inappropriate. First, the question of actual and substantial benefit is at a minimum a fact question and could not be decided against us on the pleadings. And I'd suggest that courts ought to defer to sophisticated parties that make multimillion dollar investments based on what they perceive to be an actual benefit in getting a use restriction rather than accept an argument after the fact that a self-created mootness occurs because a breach which required the liquor license, the breach required the liquor license to be granted because it was only a liquor store that was prohibited, is somehow unrelated to the fact that there was a breach. So the fact that the liquor license was granted is unrelated to the breach when in fact it consummates the breach. But that was the causation analysis below. We respectfully disagree with that. There is no cognizable harm to Costello. He's said he's losing the rent, but he wasn't entitled to that rent, and the premises are available for any number of other uses. Your Honors, my time is up. I've saved some time for rebuttal. I do have one question for you. Yes, Your Honor. I wanted to let you make your merits argument, but I have a concern as to whether we have a jurisdictional issue here given that GAPS counterclaims appear at least not to have been ruled on. What's your position on that? The GAPS counterclaims, if they were not, they were not ruled on. And so that issue still resides. The 12C motion, however, which was granted, it resulted in the striking of our complaint. So I believe that, you know, the order which was the denial of our motion for judgment on the pleadings and the grant of the judgment on the pleadings for Costello mean that at least that is properly before the Court. How? I mean, what would be the authority for saying that we could take the dismissal of the complaint when there are still outstanding counterclaims that go to the same basic dispute between the parties? It's just all repackaged and involves slight shifts in emphasis, but it's all the same dispute. I see. Your Honor's point is that under Rule 54, there wasn't a separate order entered saying that it was immediately appealable. Well, maybe we'll hear from your adversary. They're counterclaims, and you will have rebuttal if you want to share anything more on that subject. I may not have much more to share, Your Honor. Thank you. Good afternoon, Your Honors. My name is Glenn Patsulo. I represent the Costello Defendants. I think what's important to emphasize here is on this timeline and this imputation of some sort of malevolent motives on the part of Anthony Costello regarding his development of this 60-plus acre project, as a developer, you have to bear in mind that on August 29th of 2014, when he signed the agreement with Costco, the reciprocal easement agreement, and then thereafter, trying to develop a piece of property, there was only one building on the property that was standing. The other parcels were parcels that were hopefully going to be approved by the City of Rochester. The only parcel or the only building that was standing was that building in Building F, which is the Siemens building. So when Costello, on August 29th of 2014, enters into the reciprocal easement agreement, he uses the Siemens building, which is Building F, as the placeholder. It's mere happenstance that he selects that building. There's no nefarious motive there. As a matter of fact, if you look as part of the joint appendix, what the property looks like, that is the entire 60 acres, it looks like a moonscape as of August 29th, 2014, and the only building standing is in fact that Siemens building, Building F. Now what's also interesting, and this belies any claim of malevolence or chicanery on the part of Costello and secondarily Gap, is that when the leases signed between Costello and To this day, as at that time, 400 East Henrietta Road is a vacant parcel. I was not the scrivener of that lease. I did not do Costello's corporate work, but nonetheless, there was no malevolent motive at that time. Why would we care about the motivation here? I mean, we're looking at an agreement that generally prohibits liquor stores in the development except that it allows Costco to have one on its parcel, and Costello could have one not just in general, but in Building F, as well as on the southern property. But I mean, don't we have to deal with whether or not there was an entitlement on Costco's part to hold Costello to those terms? Your Honor, the answer to that is not really, because if you look at the reason behind why what was done was done and what the lower court ruled, is that under RPAPL, at that point in time, based upon what the Liquor Authority subsequently does, there was in fact no harm to Costco that was caused by Costello. Bear in mind, Judge, in April of 2014, before the July hearing that counsel wants you to review with the State Liquor Authority, which I have no problem with, but some three months earlier, Costello writes a letter to the Liquor Authority in support of Costco's application for its liquor license within its store. So bear in mind, Your Honor, you have the Costco, which is a big box that's sitting in there. Then off of approximately 417 feet away is Building F, which is the Siemens building, and then next door to the Siemens building, 195 feet to its right, is Building D, which had subsequently been built. That's actually farther from the Costco store. That 500 feet is key, because in terms of the State Liquor Authority turning down the application, which was finally approved in November of that year, because it was a conditional in February, there's no harm to Costco. The reciprocal easement agreement doesn't say that Costco is entitled to have its liquor store first. It doesn't say that. From the Costco-Costello perspective, Costello had the right to put two liquor stores in two locations, Building F, which was simply a happenstance placeholder, and the Southern property. Interestingly enough, the Southern property, Buildings 9 and 10, are 417 and 400 feet away from the Costco proposed liquor store. So it's actually closer than Building D is. That's significant from City of Rochester codes. If you do liquor work in front of the City of Rochester, you have to get a restrictive use permit, which I don't think Costco knows about, if they're going to allow a liquor store within 500 feet of a previously existing liquor store. That having been said, there's no harm to Costco. And I find what's interesting here is Costello supports Costco in its application for a liquor license. He's not opposed to it. He could have had two stores in there, one on the Southern property, one in Building F, or what I say, Building D. It doesn't matter. That's what Judge Larimer found. It doesn't matter under the RPAPL when you do the exact analysis that if at the time the enforceability of the restriction is brought in question, it appears that the restriction is of no actual and substantial benefit to the persons seeking its enforcement. And the one issue I would take, with the representations mirrored here today about the multimillion dollar project, please bear in mind, Your Honors, that the Gap Liquor Store is 11,500 square feet. The easement agreement says it's got to be less than 12,000. The proposed CHM liquor store, which would exist within the Costco building envelope, is 3,500 to 4,000 square feet. That does not take millions of dollars to develop that portion of the liquor store. Thank you. Mr. Thomas? May it please the court, first of all, let me thank the court for adjourning oral argument on this matter due to my family situation. I appreciate it. The fact of the matter here is that there are two separate leases involved. There is the lease that runs between Costello and Costco. That's the one that has the REA in it. There is a lease that runs between Costello and Gap that does not have the REA in it, and it makes no reference to the REA. So the REA really has no import as it relates to Gap. However, what ended up happening, of course, as we all know, is that a real hot mess started out there in Henrietta. And that was with Costco beginning to make rumblings against Costello about the fact of the location of the Gap store. So what did Pat Burke do? And mind you, this is a single partnership. That's who Pat is. He's sitting here in court today. He wanted to make sure that there was a firewall that existed between him and this hot mess. Why did he want that? Because he's just, this is a small liquor store owner. And the last thing he needs is to be dragged into a contentious litigation with an entity the size of Costello and an entity the size of Costco. And that's what the separate agreement was all about. The separate agreement that was brokered as between Gap, Mr. Burke, and CHM as agent for Costco. That had a single purpose, and that was to buy Mr. Burke and Gap's peace. A liquor store in Henrietta, New York is not going to be able to make money if it's constantly having to fight an 800 pound gorilla like Costco. It will simply beat him into the ground. And that is exactly why Mr. Burke refused to agree to that one provision that Costco wanted, which was that the agreement was based upon CHM receiving a license. Pat knew that if CHM did not get a license, Costco would continue to beat him into the ground. That is not a way to make money in a small liquor store, and so he rejected that. And what did he do instead? They came back the next day, and the oral agreement was entered into, in which Pat went in front of the State Liquor Authority and prostrated himself in favor of CHM and Costco. He did a complete 180 and said that he was now in favor of it. Why? The facts that would be in dispute though, I mean, they are the basis of your counterclaim. Yeah, they are. But for purposes of our review here, it seems to me they raise two concerns. One, they're disputed, and so at least to the extent they're disputed, we have to assume them in the light most favorable to the plaintiff. And if you're raising them with respect to your counterclaim, I have the jurisdictional question that I put to Mr. Joseph. You want to address both those concerns? Well, I'm the one that raised the 12C issue in the first place, so I agree that this is not a final judgment. And I don't believe that it's properly before the court. It's not a final determination. And so for that reason, I request that our argument relative to 12C and that the court does not have jurisdiction applies here. I'm sorry, what was- You're arguing facts to us that are in dispute. What do you want us to do with them? Well, I think the very, I'm not denying that those are facts that are in dispute. What I am saying though is that if the court decides to determine that they're in dispute, that it should not also at the same time flip the determination in favor of Costco. All right, I understand. Thank you. Thank you. Your Honor, joint appendix one indicates that the case was closed following the entry of judgment. Now, I do not want to make a representation to you, but perhaps we should file a letter brief afterwards on that issue. Because that is, I see that reference on JA1. And if the case is closed, then I think we have a final judgment. I'm not going to raise all of the fact questions Your Honor has identified. Help us a bit here. JA1, what is it that I'm supposed to see? Well, Your Honor, Judge Cabranes, what I'm seeing is, if you look at where it says page one of 11, then just immediately beneath that, appeal, case ref closed, 2016. Yes. And then it says mediation. I would really want to explore it rather than make a representation to Your Honor about it, that it has been closed or it has not been closed. It was our understanding that final judgment had been entered. But Judge Raggi has certainly raised excellent questions about that. I'll leave it to Judge Cabranes as the presider whether we want to give you a date by which to file anything. Yes, I think, what, how much time do you require, Mr. Joseph, a week? I think that would be plenty, Your Honor. Thank you. All right, so a week from today. And Your Honor, the only other thing, there's one point I do want to make, because it goes to the causation kind of analysis of the district court, which was repeated by Mr. Paluzzo. And that is that Costco did not agree to a use restriction that said X number of feet from the entrance of the Costco store. It would only agree to invest this money if the use restriction said that there could only be a liquor store in one of two places, or in both of two places. And that's because neither of those places could preempt the CHM store. One was occupied, the other was undeveloped. And timing is everything. This is a new development. Costco wanted its store and complex to be established. Over time, as more and more traffic comes in, and then the southern properties developed, other entrepreneurs, other businesses will make their decisions about whether they want to put in new liquor stores, go through the application process. But to say that one is closer than the other entirely misses the point with all respect to the district court. Just as I would say, saying that the breach is unrelated to what the SLA did. I mean, the SLA may not have focused on the breach, but the breach happened because of what the SLA did. That is what allowed the liquor store to open. I mean, in a way, it's sort of like Bridge versus Phoenix Bond, the RICO case, where there were bids that were submitted. The bids had to be accepted, but the acceptor isn't harmed, it's the other bidders that are harmed. So, your honors, I've overextended my stay. Thank you very much. Joseph, just tell us what, in your view, what do you want from us? What is the decree that you would wish us to issue? In my wildest dreams, it would be that the use restriction, that our motion for judgment on the pleadings would be granted. Because there is no showing that there's a lack of actual and substantial benefit. We don't have an outmoded restriction. We don't have one that's leaving property unused. But- But there are clearly issues of fact on that. And, your honor, with that, then if it were simply a reversal of the dismissal of the complaint, a reversal of the grant of judgment on the pleadings, and we go back to the district court, we'd be perfectly content with that. All right, fine. So you have until the 25th, a week from today, at the close of business. And, of course, opposing counsel will have until the next day, let's make it, let's make it Friday. Bear with me one moment. So Mr. Joseph will give us something by the close of business on Wednesday, October 25th. And other counsel shall have an opportunity to comment up to the close of business on Friday, October 27th. Thank you, your honor. How brief would you like them, four pages? Four pages is fine. All right, thank you very much. Thank you very much.